UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 07-169 |
| BARRY S. SCHEUR, ET AL. | * | SECTION "L" (2) |

**ORDER & REASONS**

Before the Court is Robert McMillan's Motion to Dismiss All Counts of the Indictment (Rec. Doc. 27) and Barry Scheur's Motion to Dismiss Indictment (Rec. Doc. 36). For the following reasons, the Defendants' motions are now DENIED.

**I.      FACTUAL BACKGROUND**

In January 2000, Barry Scheur took control of a Louisiana-licensed health maintenance organization ("HMO") called Southeastern Medical Alliance and renamed it The Oath for Louisiana, Inc. Scheur was the owner, president, chief executive officer, and director of The Oath and its parent companies, Venture Health Partnership Group of Louisiana, Inc. and Venture Health Partnership Group, LLC. Scheur was also the owner, president, and chief executive officer of Scheur Management Group, Inc. ("SMG"), a healthcare consulting business. Robert McMillan and Rodney Moyer were retained by SMG as consultants. Danette Bruno was employed by SMG as its controller. SMG was allegedly paid between $200,000 and $350,000 per month, for a total of $6.1 million over approximately two years, to manage The Oath.

The Oath received insurance premiums from and on behalf of member individuals and groups and, in turn, was obligated to pay medical providers such as hospitals and physicians for

services provided to the insureds.  Louisiana regulates many aspects of an HMO's operations; for example, state law requires that HMOs file various financial reports and maintain a minimum net worth.  *See* La. Rev. Stat. Ann. § 20:2001 *et seq.*  The financial reports which were filed on behalf of The Oath inaccurately represented its net worth as being sufficient.  In fact, The Oath had insufficient funds and was unable to pay medical providers for services rendered to insureds.  In April of 2002, the Louisiana Department of Insurance ("LDOI") placed The Oath in receivership and began liquidation proceedings.

## II.  PROCEDURAL BACKGROUND

In November 2005, a grand jury indicted Scheur, McMillan, and Moyer on charges of mail fraud and conspiracy stemming from the financial failure of The Oath.  On February 17, 2006, the grand jury returned a Superseding Indictment adding Bruno as a defendant and adding eleven new counts.  Six months later, on August 11, 2006, the grand jury returned a Second Superseding Indictment for Conspiracy, Mail Fraud, and Wire Fraud.  The Second Superseding Indictment charged one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, five counts of mail fraud in violation of 18 U.S.C. § 1341, and eight counts of wire fraud in violation of 18 U.S.C. § 1343.  The Government alleged that beginning at least as early as September 2000 and continuing through at least April 2002, the Defendants "did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and obtain money and property by means of material false and fraudulent pretenses, representations and promises by misleading the LDOI into believing that The Oath was meeting the statutorily required minimum net worth of $3 million, and thereby unlawfully enriching themselves through continued operation of The Oath, during a time when The Oath was not meeting that statutorily required

minimum net worth."  (Second Superseding Indictment ¶ 19.)[1]

On January 3, 2007, the Court denied the Defendants' motion to dismiss the Second Superseding Indictment.  The Court read the indictment liberally, and found that it alleged more than fraud on the Louisiana Department of Insurance ("LDOI").  The Court concluded that "all of the facts alleged in the indictment, which the Court must accept as true, lead to the inescapable conclusion that in addition to defrauding the LDOI, the Defendants also defrauded insureds and medical providers of property, namely money."  *United States v. Scheur*, No. 05-304, 2007 WL 29065, at *4 (E.D. La. Jan. 3, 2007).  Thus, the Court held that *Cleveland v. United States*, 531 U.S. 12 (2000), did not mandate dismissal of the indictment.

On April 3, 2007, the Court reconsidered its decision and dismissed all counts of the Indictment, the Superseding Indictment, and the Second Superseding Indictment for failure to state an offense against the United States.  The Court found, upon further consideration, that the Government had failed to specifically allege that anyone other than the LDOI was defrauded, and that an implication or inference that someone other than the LDOI was defrauded was insufficient under *Cleveland*.  The Court stated that "[b]eyond the general allegation in the first paragraph of the Second Superseding Indictment that The Oath 'received insurance premiums . . . and, in turn, paid medical providers,' the indictment makes no reference to any victims defrauded of 'property,'" and ultimately concluded that in order to avoid the *Cleveland* problem, an impermissible "constructive amendment" of the indictment would be required when charging the jury. *United States v. Scheur*, No. 05-304, 2007 WL 1063301, at *2 & n.3 (E.D. La. Apr. 3,

---

[1] All of these materials appear in criminal docket number 05-304, which was the case number originally assigned to the case.  The first three indictments were later dismissed, a new indictment was filed, and the instant criminal docket number was opened.

2007). Accordingly, the Court dismissed all of the indictments and entered judgment in favor of the Defendants.

On April 27, 2007, the Government filed what it termed a Third Superseding Indictment in this case pursuant to 18 U.S.C. § 3288, which provides that:

> [w]henever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, *a new indictment* may be returned in the appropriate jurisdiction within six calendar months of the date of dismissal of the indictment.

18 U.S.C. § 3288 (2000) (emphasis added). The Court met with the parties and counsel agreed that a new case would be opened for this "new indictment" (as there was nothing left to supersede in criminal docket number 05-304), but that this Court would retain the case in light of its familiarity with the matter.

In the new indictment, the Government alleges that beginning at least as early as September 2000 and continuing through at least April 2002, the Defendants "did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and obtain money and property, *specifically from The Oath, The Oath's insureds, and The Oath's medical service providers*, by means of material false and fraudulent pretenses, representations and promises by misleading the LDOI into believing that The Oath was meeting the statutorily required minimum net worth of $3 million, and thereby unlawfully enriching themselves through continued operation of The Oath, *specifically by continuing to collect premiums from the insureds and continuing to collect management fees from The Oath*, during a time when The Oath was not meeting that statutorily required minimum net worth." (New Indictment ¶ 19) (emphasis added).

### III. PRESENT MOTIONS

The Defendants now move again to dismiss all charges in this matter, asserting two

arguments in support of the instant motions. First, the Defendants argue that the new indictment is untimely under 18 U.S.C. § 3282 and cannot be "saved" by 18 U.S.C. § 3288 because it substantially broadens the previous charges. Second, while the new indictment explicitly alleges that someone other than the LDOI was deprived of property, and therefore "cures" the *Cleveland* problem previously identified by the Court, the Defendants argue that it nevertheless fails to state an offense against the United States due to a lack of convergence between the entity allegedly defrauded (the LDOI) and the entities from whom property was obtained (the insureds, medical providers, and The Oath itself). In response, the Government contends that both arguments lack merit and asks the Court to deny the instant motions and allow this case to proceed to trial.

## IV.   LAW & ANALYSIS

### A.   Timeliness of the New Indictment

The charges in this case are subject to the five-year statute of limitations for non-capital offenses. *See* 28 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). It is undisputed that the alleged mail and wire frauds were committed between March and December of 2001, and that the LDOI seized control of The Oath on April 10, 2002. The most recent indictment in this case was returned on April 27, 2007, more than five years after the LDOI seized control of The Oath. But the Government argues that the charges in this new indictment may nevertheless be timely in light of 28 U.S.C. § 3288, which provides as follows:

5

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information . . . .[2]

Courts have held that "an untimely indictment can only be saved by the section 3288 exception if it does not broaden or substantially amend the original charges 'tolled' by the previous indictment." *United States v. Italiano*, 894 F.2d 1280, 1283 (11th Cir. 1990); *see also United States v. Charnay*, 537 F.2d 341, 354-55 (9th Cir. 1976) (noting that § 3288 only tolls the limitations period if "approximately the same facts" are "used for the basis of any new indictment" when "the earlier indictment runs into legal pitfalls"). The determination of whether the original charges are broadened is dependent on whether the defendant was afforded sufficient notice of the charges contained in the new indictment. As the *Italiano* court recognized, "[n]otice to the defendant is the central policy underlying the statute of limitations. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him." *Italiano*, 894 F.2d at 1283.

Accordingly, the issue presented in the instant case is whether the original indictments afforded the Defendants sufficient notice that the Government was alleging that people or entities other than the LDOI were being defrauded and deprived of money or property. In its initial review of the prior indictments, the Court previously noted that "all of the facts alleged . .

---

[2] Without engaging in a detailed analysis of exactly when the statue of limitations began to run on the instant charges, the Court notes that it is conceivable that the statue of limitations had not expired when all charges were dismissed on April 3, 2007, but rather merely before the most recent indictment was returned. Section 3289 would govern this alternative situation, but the analysis would be the same as that under section 3288.

., which the Court must accept as true, lead to the inescapable conclusion that in addition to defrauding the LDOI, the Defendants also defrauded insureds and medical providers of property, namely money." *United States v. Scheur*, No. 05-304, 2007 WL 29065, at *4 (E.D. La. Jan. 3, 2007). Ultimately, the Court was convinced that in light of *Cleveland*, the indictment should have explicitly stated as much, which it now does. But the basic theory underlying the prosecution of this case has not changed. The Government alleges, previously by implication and now directly, that the Defendants presented false information in The Oath's financial statements in order to collect premiums from the insureds and then use these premiums to pay themselves management fees, rather than paying medical providers for services rendered to the policyholders. The Defendants have been aware from the first indictment that they were on trial for their part in this scheme.

The Defendants' argument in this case is almost identical to the one asserted by the defendant in *Italiano*. In that bribery case, the original mail fraud charge alleged a scheme to defraud citizens of Hillsborough County, Florida of their right to honest governmental services. *See Italiano*, 894 F.2d at 1281. The original indictment was dismissed in light of the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350 (1987), which held that the mail fraud statute only protects citizens from the fraudulent taking of money or property. The new indictment cured the *McNally* problem by alleging a scheme to defraud the government of Hillsborough County of a cable television license. *See Italiano*, 894 F.2d at 1282. Because the two indictments relied on the same underlying facts, despite a change in the object of the fraud, the Eleventh Circuit held that the defendant was not deprived of notice and that the new indictment fit within the section 3288 exception. *Id.* at 1286.

Unlike *Italiano*, the object of the fraud has not changed in this case, but has merely been explicitly specified. The earlier indictments did not specifically allege that anyone other than the LDOI was deprived of property, but this was clearly implied. The current indictment now specifically alleges that insureds, medical providers, and The Oath itself were defrauded of property, namely money. If the Defendants' argument were to be accepted in this case, "section 3288 would be rendered essentially useless in correcting defects in indictments that stem from legal errors." *Italiano*, 894 F.2d at 1286. The new indictment in this case merely cures a potential *Cleveland* defect, it does not broaden or substantially amend the original charges, and therefore the Court concludes that the new indictment is timely.

**B.      Convergence**

In its initial review of the prior indictments in this case, the Court discussed the concept of convergence and concluded that the indictments did not fail to state an offense on this ground:

> It has been said that "[a] prosecution that relies solely on a theory that the defendant was unjustly enriched by the fraudulent scheme is insufficient to allege a cognizable [mail fraud] offense." Donna M. Maus, Comment, *License Procurement and the Federal Mail Fraud Statute*, 58 U. Chi. L. Rev. 1125, 1138 & n.75 (1991). This is because there must be a "convergence" between the person the defendant intends to deceive and the person wrongly deprived of property. *See United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) ("[T]he intent must be to obtain money or property from the one who is deceived."); *United States v. Evans*, 844 F.2d 36, 38-40 (2d Cir. 1988) ("The point is not that the defendant must receive the same money or property that the deceived party lost, but only that the party deceived must lose money or property.").
> 
> However, the government does not rely solely on a theory of unjust enrichment in this case, as it did in *Cleveland*. The defendants in *Cleveland* fraudulently obtained a license from the government and unjustly enriched themselves by operating video poker machines. The patrons that paid to play video poker were not defrauded; they obtained enjoyment (and perhaps jackpots) in return for their antes. The insureds and medical providers were not so lucky in this case. Indeed, they were collectively stuck with a $45 million bill after two years of dealing with The Oath.

8

*United States v. Scheur*, No. 05-304, 2007 WL 29065, at *4 (E.D. La. Jan. 3, 2007) (footnote omitted).  Moreover, as the Court recognized in a footnote to this discussion, "[t]here is no statutory requirement that direct misrepresentations must be made to the victims of the scheme." *United States v. Pepper*, 51 F.3d 469, 472-73 (5th Cir. 1995).  The recent decision by the United States Court of Appeals for the Fifth Circuit in *United States v. Ratcliff*, 488 F.3d 639 (5th Cir. 2007), does not dictate a different result.  In *Ratcliff*, the Fifth Circuit made clear that while "the misrepresentations in a mail fraud scheme need not be made directly to the scheme's victim, the alleged scheme to defraud must nevertheless be one to defraud the victim."  488 F.3d at 473 (internal citation omitted).  The Court stands by its prior conclusion that the indictment in this case charges a scheme to defraud insureds, medical providers, and The Oath itself of property, and therefore the Court will not revisit the issue of convergence.

V.    **CONCLUSION**

Accordingly, for the foregoing reasons, IT IS ORDERED that Robert McMillan's Motion to Dismiss All Counts of the Indictment (Rec. Doc. 27) and Barry Scheur's Motion to Dismiss Indictment (Rec. Doc. 36) are hereby DENIED.[3]

New Orleans, Louisiana, this  17th  day of   September  , 2007.

                                                   UNITED STATES DISTRICT JUDGE

---

[3] By Order of the Court, the other Defendants in this case, Rodney Moyer and Danette Bruno, are deemed to have joined in the instant motions to dismiss. *See* Rec. Docs. 100 & 119 in criminal docket number 05-304; *see also* Rec. Doc. 38 in criminal docket number 07-169.